IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| MAJESTIC HOMES, INC.,<br><br>              Plaintiff,<br><br>vs.<br><br>ROSE HURT,<br><br>              Defendant. | CV 16-08-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Plaintiff Majestic Homes, Inc. ("Majestic") brings this action against Defendant Rose Hurt ("Hurt"), for breach of contract arising out of the sale of a modular home. (Doc. 4.)

Judge Watters has referred this case to the undersigned under 28 U.S.C. § 636(b)(1)(B). (Doc. 15.) Presently before the Court is Majestic's Motion for Summary Judgment. (Doc. 16.) The motion is fully briefed and ripe for the Court's review. (Docs. 17, 21, 24.)

Having considered the parties' submissions, and arguments presented at the motion hearing on August 8, 2017, the Court **RECOMMENDS** Majestic's Motion for Partial Summary Judgment[1] be **GRANTED**.

---

[1] At oral argument, counsel confirmed that Majestic is only moving for partial summary judgment on the issue of Hurt's liability for breach of

1

## I.   BACKGROUND[2]

Majestic is a Montana corporation that sells modular homes in Billings, Montana.  (Doc. 20 at ¶ 1.)  Hurt is an individual who resides in North Dakota.  (*Id.* at ¶ 2.)  In October 2013, Hurt started negotiations with Majestic for the purchase of a modular home.  (*Id.* at ¶ 3.)  The parties negotiated the terms of the sale for several months, and in June 2014, Hurt contracted to purchase a modular home.  (*Id.* at ¶¶ 3, 4.)  On June 21, 2014, Majestic sent Hurt a copy of the Purchase Agreement for review.  (*Id.* at ¶ 5.)  The contract price for the home was $127,989.00.  (*Id.* at ¶ 8.)  At the time of contracting, Hurt was required to pay Majestic a $12,000.00 down payment.  (*Id.* at ¶ 10.)

On September 12, 2014, Choice Financial Bank sent Majestic a letter indicating the bank was committed to financing the balance of Hurt's purchase price of the home.  (*Id.* at ¶ 6.)  Majestic would not have agreed to continue with the sale unless it had the assurance from the bank that Hurt had financing in place to pay the remainder due under the Purchase Agreement.  (*Id.* at ¶6.)

---

contract.  Majestic is not seeking entry of final judgment or a determination of damages at this time.

[2] The background facts are taken from Hurt's Statement of Disputed Facts (Doc. 20), and are undisputed except where indicated.

On October 30, 2014, Hurt faxed Majestic a copy of the executed Purchase Agreement. (*Id.* at ¶ 7.) Under the Agreement, Hurt was responsible for preparing the foundation, including the basement and marriage wall. (*Id.* at ¶ 9.) Due to setbacks in preparing the basement and foundation, the delivery of the home was delayed. (*Id.* at ¶ 12.) On December 29, 2014, the home was delivered to Hurt's property in Golden Valley County, North Dakota. (*Id.* at ¶ 14.)

Following delivery of the home, Majestic performed a routine inspection of the home to determine what warranty work needed to be performed. (*Id.* at ¶ 18.) Majestic states the inspection revealed minor defects, and the company offered to conduct the repairs under the manufacturer's warranty once the home was paid for. (*Id.*) Hurt disputes that the defects were minor, and states Majestic refused to inspect the damages or fix the problems with the home following delivery. (*Id.* at ¶ 18, 22-24.) Hurt asserts that she did not accept the home due to the defects that were discovered upon delivery and placement. (*Id.* at ¶ 22.)

In January 2015, Chuck Bokinskie with Choice Financial Bank informed Majestic the bank was unable to pay Hurt's outstanding balance because Hurt "fired" the bank. (*Id.* at ¶ 16.) Hurt never informed Majestic that she had fired Choice Financial Bank, or that she did not have financing

in place to pay for the outstanding balance. (*Id.* at ¶ 17.) Hurt has not made any other payment toward the remaining balance since delivery of the home. (*Id.* at ¶ 11.) The modular home remains located on Hurt's property in North Dakota. (*Id.* at ¶ 15.)

As a result of Hurt's failure to pay the balance of the home, Majestic was forced to pay additional costs to service its internal loan needed to buy the home from the manufacturer, to insure the home, and to bring this lawsuit to recover the unpaid purchase price. (*Id.* at ¶ 20. [3])

Majestic initiated this action in Montana state court on December 17, 2015. (Doc. 4.) Majestic asserts causes of action for (1) breach of contract; (2) account stated; and (3) unjust enrichment/quantum meruit. (*Id.*)

On February 10, 2016, Hurt timely removed, alleging this Court has jurisdiction based on diversity of citizenship under 28 U.S.C. §1332. (Doc. 1.) Hurt then filed an Answer and Counterclaim[4] against Majestic on April

---

[3] In opposing Plaintiff's Statement of Undisputed Facts, Hurt did not specify whether she disputed the facts set forth in paragraph 20. She also did not point to any contrary evidence. Because a party asserting that a fact "is genuinely disputed must support the assertion by citing to particular parts of materials in the record," Fed.R.Civ.P 56(c), the Court will deem paragraph 20 undisputed.

[4] To the extent Hurt's counterclaims are actually affirmative defenses, the Court will treat the pleading as if it were correctly designated under Federal Rule of Civil Procedure 8(c)(2).

8, 2016, asserting causes of action for (1) breach of contract; (2) negligence; (3) breach of warranty; (4) revocation of acceptance; (5) rejection; (6) unconscionability; and (7) violation of the Montana Consumer Protection Act/unfair trade practices.  (Doc. 6.)

Majestic now moves for partial summary judgment on Count One of its Complaint, and on all of Hurt's Counterclaims.  (Doc. 16.)

## II.    ANALYSIS

### A.    Legal Standard

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving party can satisfy this burden in two ways:  (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *Id.* at 322-23.  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact. *Kennan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the

pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. However, the Ninth Circuit "has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *Johnson v. Washington Metro. Transit Auth.*, 883 F.2d 125, 128

(D.C. Cir. 1989) (discussing cases in which self-serving testimony uncorroborated by other evidence did not create a genuine issue of material fact)).

**B.      Majestic's Breach of Contract Claim**

As an initial matter, the Court finds that the Uniform Commercial Code ("UCC") applies to Majestic's breach of contract claim. The UCC governs contracts for the sale of "goods." Mont. Code Ann. § 30-2-102. "Goods" are defined as "all things (including specifically manufactured goods) which are movable at the time of identification to the contract for sale." Mont. Code Ann. § 30-2-105(1).

In *Little v. Grizzly Mfg.*, 195 Mont. 419, 425 (1981), the Montana Supreme Court determined a modular home is a "good" under the UCC. The Court explained the modular home was a "good" because it was manufactured to the buyer's specifications with regard to design and decoration, and at the time of identification to the contract, which was the first step in production, the home was movable. *Id.* Likewise, here, the modular home was manufactured to Hurt's specifications, and at the time of identification of the contract, the home was moveable. The home is therefore a "good," and the UCC applies.

Where a sale is governed by the UCC, the UCC provisions must be given primary consideration, with the law of contracts being used only to supplement the Code provisions. *Norwest Bank Billings v. Murnion*, 210 Mont. 417, 422-423 (1984); Comment to Mont. Code Ann. § 30-1-103 (stating "the Uniform Commercial Code . . . is the primary source of commercial law rules in areas that it governs . . . . Therefore, while principles of common law and equity may supplement provisions of the Uniform Commercial Code . . . , they may not be used to supplant its provisions . . . , unless a specific provision of the Code . . . provides otherwise. In the absence of such a provision, the Uniform Commercial Code . . . preempts principles of common law and equity that are inconsistent with either its provisions, or its purposes and policies"). Accordingly, the Court will analyze Majestic's claim under the UCC.

After a contract is formed, the seller has an obligation under the UCC to deliver the goods, and the buyer has an obligation to accept the goods and pay in accordance with the contract. Mont. Code Ann. § 30-2-507. If the goods fail to conform to the contract, the buyer may reject them. Mont. Code Ann. §§ 30-2-601; 30-2-602. In certain circumstances, a buyer may also revoke acceptance of nonconforming goods. Mont. Code Ann. § 30-2-608.

Where the buyer "wrongfully rejects or revokes acceptance of goods or fails to make a payment due," the seller may recover damages for nonacceptance under § 30-2-708, or seek to recover the price under § 30-2-709.  Mont. Code Ann. § 30-2-703(e).  In an action for damages under Section 30-2-708, the seller can recover "the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages. . . , but less expenses saved in consequence of the buyer's breach."  In an action for price under Section 30-2-709, the seller may recover the price of goods accepted, together with any incidental damages.

There is no dispute the parties executed a Purchase Agreement, that Majestic delivered the modular home to Hurt's property in North Dakota, and that Hurt failed to pay the outstanding balance due of $115,983.00.  (Doc. 20 at ¶¶ 4, 8, 10-11, 13-14, 20.)  The primary issue bearing on Majestic's claim for breach of contract, however, is whether Hurt accepted the modular home.  If so, Hurt was contractually bound to pay the contract price upon acceptance.  Mont. Code Ann. § 30-2-607.

The UCC defines acceptance as follows:

Acceptance of goods occurs when the buyer:

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or

10

that the buyer will take or retain them in spite of their nonconformity; or

(b) fails to make an effective rejection (subsection (1) of 30-2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by the seller.

Mont. Code Ann. § 30-2-606(1). If the buyer does not reject within a reasonable time, acceptance is presumed. *Id*; *see also Micro Data Base Systems, Inc. v. Dharma Systems, Inc.*, 148 F.3d 649, 655 (7th Cir. 1998) (noting goods are deemed accepted if the buyer fails to communicate its rejection to the seller, after having had a reasonable amount of time to inspect the goods).

With regard to rejection, the UCC provides:

Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

Mont. Code Ann. § 30-2-602.

The UCC rule governing revocation provides in relevant part:

(1) The buyer may revoke acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to the buyer if the buyer has accepted it:

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured.

11

. . .

> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it . . . It is not effective until the buyer notifies the seller of it.

Mont. Code Ann. § 30-2-608.

At oral argument, Majestic asserted Hurt's acceptance can be gleaned from the fact that the modular home was delivered to her property in December 2014, and that there is no evidence Hurt either rejected the home or revoked her acceptance. Majestic acknowledges that the home required some degree of repairs after it was delivered, and contends that it has agreed to make all repairs identified in the post-placement inspection. (Doc. 19 at ¶ 11-13.) Majestic also points out that under the Purchase Agreement, Hurt agreed she would "not withhold any portion of the purchase price" to enforce completion of warranty work. (Doc. 19-3 at 1.)

Hurt contends she should be excused from her obligation to pay the outstanding balance because the home was damaged during delivery and has various defects. The Court notes that Hurt did not argue in her opposition brief that rejection or revocation excused her duty to pay. Indeed, her opposition brief fails to address rejection or revocation at all. (*See* Doc. 21.) At the hearing on the motion, however, her counsel argued that acceptance is

lacking because Hurt either rejected the home or revoked her acceptance. Hurt's contentions are unavailing.

First, Hurt did not reject or revoke her acceptance of the home within a reasonable time. Majestic argues that Hurt did not communicate revocation or rejection until she asserted her counterclaims in this action. (Doc. 17 at 15-16; Doc. 24 at 13.) Hurt did not respond to this assertion in her opposition pleadings. As noted, Hurt's opposition brief is silent on the issue of rejection or revocation. Nevertheless, Majestic's contention appears to be confirmed by the language of Hurt's Answer and Counterclaim. (Doc. 2.) Hurt does not allege that she had previously rejected or revoked acceptance of the home; rather, Hurt states she "hereby revokes her acceptance of the manufactured home" and "invokes all rights to reject delivery of the manufactured home, and the contract." (*Id.* at ¶ 27.) Thus, based on the plain language of Hurt's pleading, it appears Hurt attempted to reject the home or revoke her acceptance for the first time upon responding to this litigation.

To be effective, however, both rejection and revocation must occur within a reasonable time after delivery. Mont. Code Ann. §§ 30-2-602(1); 30-2-608(2). Hurt's attempt to reject or revoke sixteen months after delivery of the modular home, and only upon being sued by Majestic, is not timely.

*See Northwest Truck & Trailer Sales, Inc. v. Dvorak*, 269 Mont 150, 157

(1994) (holding the buyer of a truck was not entitled to relief under the UCC

where he failed to notify the seller of an alleged nonconformity until after

the seller filed suit to recover the truck).

Second, to the extent Hurt contends that she attempted to reject or

revoke her acceptance at an earlier time, she has failed to establish there is a

genuine dispute of material fact on this issue. "Whether a buyer has

accepted (or rejected) goods is ordinarily a question of fact. However,

where the evidence 'admits of only one reasonable conclusion, the issue

becomes on of law.'" *Konitz v. Claver*, 287 Mont. 301, 307 (1998) (finding

summary judgment was proper where buyer failed to satisfy his burden to

present any evidence or legal authority to show he made an effective

rejection of timber after it was delivered).

At oral argument, Hurt argued the fact that she cancelled her loan with

Choice Financial Bank is sufficient to establish she rejected the modular

home. But it is undisputed that Hurt never informed Majestic about

cancelling the loan. (Doc. 20 at ¶ 17.) The buyer must notify the seller of

its rejection in order for the rejection to be effective. Mont. Code Ann. § 30-

2-602(1). *See also CMI Corp. v. Leemar Steel Co.*, 733 F.2d 1410, 1413

(10th Cir. 1984) ("Seasonable notice of rejection requires the buyer to give

14

the seller clear and unambiguous notice of his rejection within a reasonable time."). Hurt's uncommunicated "firing" of Choice Financial Bank, without more, is insufficient to show she effectively rejected the home. Hurt has not cited to any other specific information showing when or how she communicated her purported rejection or revocation to Majestic.

Hurt also argues there are disputed facts regarding the existence, nature, and extent of alleged defects with the home. To the extent Hurt maintains that her complaints about the home establish rejection, her argument fails. Mere complaints of poor quality do not constitute rejection. *Steinmetz v. Robertus*, 196 Mont. 311, 320 (1981). *See also HCI Chemicals (USA) Inc. v. Henkel KGaA*, 966 F.2d 1018, 1023 (5th Cir. 1992) (complaints about damaged goods were insufficient to constitute rejection because the buyer "never clearly and unambiguously notified" the seller it would not accept the goods); *Midwest Generation, LLC v. Carbon Processing & Reclamation, LLC*, 445 F.Supp.2d 928, 933-934 (N.D. Ill. 2006) (emails voicing displeasure with goods were "not enough to meet the UCC standard for rejection"); *Fabrica De Tejidos Imperial v. Brandon Apparel Group*, 218 F.Supp.2d 974, 977 (N.D. Ill. 2002) ("[A] complaint about the quality of goods is simply not the same thing as a rejection.").

Further, while there is no evidence to create a genuine issue of material fact that Hurt actually revoked acceptance, it should also be noted that Hurt's complaints about the home also fail to satisfy the threshold requirements for revocation – that the goods be nonconforming, and that the nonconformity substantially impaired the value. Mont. Code Ann. § 30-2-608(1). The buyer has the burden to provide credible evidence that the goods are nonconforming. *Castro v. Eernie's Auto*, 368 Mont. 414, *3 (2012). In *Castro*, the Montana Supreme Court held a buyer's recitation of problems with a vehicle she purchased, without more, was not enough to show the vehicle was nonconforming. *Id.* Here, the only evidence Hurt cites in support of her allegations are her own conclusory answers to Majestic's interrogatories, which merely list the alleged problems with the home. Her assertions, however, are without any detail or factual support in the record. Hurt has not produced or cited any documentary evidence whatsoever, such as photographs or repair estimates to establish the home was nonconforming.

Conclusory, self-serving affidavits, lacking detailed facts and any supporting evidence are insufficient to create a genuine issue of material fact. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). The same can be said about conclusory, unsupported statements in

answers to interrogatories. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49 (1st Cir. 1990) ("In summary judgment proceedings, answers to interrogatories are subject to exactly the same infirmities as affidavits."); *H.B. Zachry Co. v. O'Brien*, 378 F.2d 423, 425-426 (10th Cir. 1967) (noting that "neither conclusionary allegations nor general denials" in interrogatory answers "perpetuate an issue of fact under Rule 56"). The Ninth Circuit has also recognized that a party's vague, conclusory answers to interrogatories, standing alone, are insufficient to withstand a motion for summary judgment. *Carter v. Clark County*, 459 Fed.Appx. 635 (9th Cir. 2011). *See also Cal. Sportfishing Protection Alliance v. River City Waste Recyclers*, 205 F.Supp.3d 1128, 1150 (E.D. Cal. 2016) (holding the defendant's "vague and conclusory answers to [the plaintiff's] requests for admission, without more, are insufficient to withstand summary judgment"); *Escandon v. Los Angeles County*, 2012 WL 12888832, *4 (C.D. Cal. Aug. 14, 2013) (finding the plaintiff's conclusory, self-serving responses to the defendant's discovery requests were not proper evidence to establish a genuine dispute of material fact).

The Court finds Majestic has met its burden to establish the absence of a genuine issue of material fact with regard to its breach of contract claim. Hurt does not contest that she agreed to purchase the home, that it was

delivered, and that she has not paid the outstanding balance. Hurt has not cited to any evidence from which the Court can find there is a genuine issue of material fact that rejection or revocation of acceptance excuse her obligation to perform under the Purchase Agreement.

Accordingly, the Court finds summary judgment is proper on Majestic's breach of contract claim.

### C.     Hurt's Counterclaims

Hurt asserts several counterclaims against Majestic, including (1) breach of contract; (2) negligence; (3) breach of warranty; (4) revocation of acceptance; (5) rejection; (6) unconscionability; and (7) violation of the Montana Consumer Protection Act/unfair trade practices. (Doc. 6.) The underlying premise behind Hurt's claims appears to be the same – that the home is defective, and therefore, Hurt should be excused from paying the outstanding balance due under the Purchase Agreement.

Majestic argues summary judgment is proper on all of Hurt's counterclaims because Majestic has established the absence of evidence supporting each one, and Hurt has not met her burden to come forward with substantial evidence supporting her case. The Court agrees. Hurt's counterclaims suffer the same flaw as noted above with respect to Majestic's breach of contract claim – a dearth of evidence from which the Court could

find there are any material, disputed facts.  The Court will address each of Hurt's claims in turn below.

### 1.    Breach of Contract

Hurt claims Majestic breached the Purchase Agreement by delivering a modular home that was defective in certain regards.  Hurt asserts Majestic failed to construct the home according to the specifications and customizations Hurt requested, failed to deliver it in a habitable condition, and failed to set it on the foundation in a workmanlike manner.  (Doc. 6 at ¶¶ 1-10.)

The UCC also applies to Hurt's breach of contract claim.  *Little*, 195 Mont. at 425.  Under the UCC, "if the goods or tender of delivery fail in any respect to conform to the contract, the buyer may: (a) reject the whole; or (b) accept the whole; or (c) accept any commercial unit or units and reject the rest."  Mont. Code Ann. § 30-2-601.  As previously discussed, Hurt has failed to establish there is a genuine dispute of material fact with regard to rejection or revocation of acceptance.  Further, Hurt has failed to marshal sufficient evidence to support her contention that the home was non-conforming.

Majestic further contends Hurt has no facts to support her claim, other than her own lay and ambiguous complaints about the home.  Majestic notes

that inspections of the home have not shown any issues other than minor cosmetic repairs, which Majestic has offered – and continues to offer – to repair. (Doc. 19 at ¶¶ 11-13.) The only evidence Hurt cites in support of her breach of contract claim is her response to Defendant's Interrogatories Numbers 7, 9, 10 and 12. (Doc. 22 at 5-9, 11.) Hurt's interrogatory answers, however, do not even fully respond to the questions put to her. For example, Hurt was asked to explain with specificity all defects she claims the home has, what she believes to be the cause of each, what efforts she has made to cure them, and the current condition of each. (Doc. 22 at 6.) Hurt responded by providing a list of vaguely-described issues with the home. (*Id.* at 6-8.) As the Court previously noted, however, conclusory, self-serving answers to interrogatories alone are insufficient to create a genuine issue of material fact.

Here, Hurt has not cited or produced any documentary evidence or witness affidavits to substantiate her breach of contract counterclaim. She has not provided a single picture, estimate for repair, damage report, or inspection report. In addition, many of her complaints about the home are couched in vague and conclusory language. For example, she describes doors and flooring as simply "damaged," states a "transition board . . . is not a threshold as it should be," complains that a curtain panel is "flawed," and

asserts parts of the home are "bowed." (Doc. 22 at 6-8.) Hurt also claims the home did meet her specifications because the living room did not contain a "bump out" and certain finishes were different than she asked for. (*Id.* at 5.) Other than her conclusory statements, however, she does not identify any provision in the Purchase Agreement to substantiate her claim in this regard, or produce any documentation to show what she received was different than what she requested. Likewise, she does not cite to any evidence, other than her self-serving interrogatory answer, claiming the driver damaged the home during delivery. Hurt has also not shown how the alleged defects render the home uninhabitable.

The Court finds Majestic has met its burden to show the absence of any facts supporting Hurt's breach of contract counterclaim. *Celotex*, 477 U.S. at 322-323. Therefore, the burden shifts to Hurt to come forward with substantial evidence supporting her case. Her burden is "not a light one." *In re Oracle Corp.* 627 F.3d 376. She "must show more than the mere existence of a scintilla of evidence." *Id.* The only evidence Hurt has identified are her conclusory, self-serving interrogatory answers. They are insufficient. *Carter*, 459 Fed.Appx. at 636.

Accordingly, the Court finds summary judgment in favor of Majestic on Hurt's breach of contract counterclaim is warranted

## 2. Negligence

Hurt's negligence claim is based on her allegations that when the home was delivered to her property, the driver "smashed one section of the home into the other section." (Doc. 6 at ¶¶ 11-17.) Majestic argues Hurt's claim fails as a matter of law because this action arises out of a contract, and Hurt cannot bring both a negligence and breach of contract claim for one breach of duty. In her response, Hurt does not contest, or even address, Magestic's argument. (Doc. 21.)

Under the Purchase Agreement, Majestic was obligated to deliver the home to Hurt's property and place it on the foundation. (Doc. 19-3 at 1.) "[T]here must exist an independent duty, separate and distinct from the contract obligation, before a party can recover for a tort or for a breach of contract on the same set of facts." *Boise Cascade Corp. v. First Sec. Bank of Anaconda*, 183 Mont. 378, 392 (1979). Hurt has failed to show Majestic owed any independent duty to her, apart from the Purchase Agreement. Therefore, as a matter of law, Hurt has no negligence cause of action on which she can recover. *Id.*

Accordingly, summary judgment in favor of Majestic on Hurt's negligence counterclaim is warranted.

/ / /

### 3. Breach of Warranty

Hurt claims Majestic made and breached "express and implied warranties with regard to the construction and condition of the manufactured home." (Doc. 6 at 7, ¶ 19.)

In support of summary judgment on this claim, Majestic argues Hurt does not have any evidence it provided or breached any warranty. Majestic points out that the Purchase Agreement specifically disclaimed Majestic was making any warranties, express or implied, other than the manufacturer's warranty. (Doc. 19-3 at 1.) Majestic asserts that to the extent Hurt's claim is based on a breach of the manufacturer's warranty, Majestic conducted a post-delivery inspection to determine what warranty work needed to be performed and offered to conduct repairs. (Doc. 19 at ¶ 11-12.) Majestic indicates it remains willing to take care of any legitimate repairs or replacements. (*Id.* at ¶ 13.) Majestic has therefore, met its burden to show the absence of a genuine issue with regard to Hurt's breach of warranty counterclaim.

The burden then shifts to Hurt, who has not come forward with any evidence to support her claim. In fact, Hurt did not address Majestic's motion and arguments regarding the breach of warranty counterclaim in her response. (Doc. 21.) In addition, her interrogatory answers fail to identify

any warranty, either express or implied, upon which her claims are based. (*See* Doc. 22 at 12-13 (In response to interrogatories asking her to list and provide information about all express and implied warranties referenced in the Counterclaim, Hurt responded "Defendant has not identified information in her possession responsive to this request").)

Consequently, Hurt has failed to come forward with any evidence to support her breach of warranty claims. Accordingly, summary judgment in favor of Majestic on Hurt's breach of warranty counterclaim is warranted.

### 4.     Revocation of Acceptance and Rejection

For the reasons explained in section B, *supra*, with regard to Majestic's breach of contract claim, the Court finds Hurt's revocation of acceptance and rejection claims fail. Accordingly, Majestic is entitled to summary judgment on these claims.

### 5.     Unconscionability

Hurt brings a claim for unconscionability, alleging the Purchase Agreement is unconscionable because it was presented on a "take it or leave it basis." (Doc. 6 at ¶¶ 29-32.) To prevail on a claim of unconscionability, Hurt must show the Purchase Agreement (1) was a contract of adhesion, and (2) that its terms are not within the reasonable expectations of the weaker party or are unduly oppressive to the weaker party. *Highway Specialties,*

*Inc. v. State Dep't of Transp.*, 351 Mont. 527, 530 (2009). "A contract of adhesion is a standard-form contract prepared by one party, to be signed by the party in a weaker position, who adheres to the contract with little or no choice about its terms." *Day v. CTA, Inc.*, 375 Mont. 79, 81 (2014). The reasonable expectations of the weaker party "derive from all of the circumstances surrounding the execution of the contract." *Woodruff v. Bretz, Inc.*, 353 Mont. 6, 12 (2009).

Majestic argues Hurt has no support for her unconscionability claim. Majestic contends the Purchase Agreement was a heavily tailored agreement, negotiated over a period of time, and therefore, was not an adhesion contract or unreasonably favorable to the drafter.

Again, Hurt did not respond to Majestic's arguments, or otherwise address her unconscionability claim. (Doc. 20.) She does, however, provide an interrogatory answer that states the Purchase Agreement was drafted on a pre-printed form by Majestic, and there were no opportunities for negotiation of any of the typewritten provisions. (Doc. 22 at 14.)

In is undisputed that the Purchase Agreement contains numerous handwritten items, and additional pages of addendums that Hurt negotiated into the Agreement. (Doc. 19-3.) On the other hand, there is no indication the preprinted terms of the agreement were negotiated, or were actually

negotiable. Therefore, it is possible that the Purchase Agreement could qualify as a contract of adhesion. *See e.g. Woodruff*, 353 Mont. at 10-11 (holding purchase agreement for sale of a motor home was a contract of adhesion even though the buyer had the opportunity to negotiate blank portions of the contract, such as the amount being borrowed, the interest rate, and the like).

Nevertheless, the Court does not need to reach the contract of adhesion issue because Hurt is unable to establish the second requirement of her unconscionability claim; *i.e.*, that the contract terms are not within her reasonable expectations or are unduly oppressive. *See e.g.*, *Highway Specialties, Inc.*, 351 Mont. at 532 (the fact an agreement is a contract of adhesion does not render the contract unenforceable if the plaintiff cannot establish the second prong of the inquiry).

There is no dispute Hurt had input into the terms of the Purchase Agreement. The parties spent nearly a year negotiating the contract. (Doc. 20 at ¶¶ 3-5, 7.) It is also undisputed that Hurt had four months to review the final contract between the time it was sent to her, and the time she returned it executed. (Doc. 20 at ¶¶ 5, 7.) Hurt certainly had the opportunity to consult with an attorney during this time period, if she wished. Therefore, the Court finds from the circumstances surrounding the execution of the

Purchase Agreement, that the contractual terms were within Hurt's reasonable expectations.

In addition, Hurt does not point to any evidence that would show the contract was unreasonably favorable to Majestic. To the contrary, the Agreement shows Hurt contracted for a new modular home with several features and modifications customized to her specifications, and in exchange she agreed to pay $127,989.00.

In short, aside from her "take it or leave it" argument, Hurt has made no effort to explain or establish what terms of the Agreement are not within her expectations or are unduly oppressive. Therefore, the Court finds Summary judgment in favor of Majestic on Hurt's unconscionability counterclaim is warranted.

### 6. Violation of Montana's Consumer Protection Act/Unfair Trade Practices

Finally, Hurt brings a claim for violation of Montana's Consumer Protection Act. The Montana Unfair Trade Practices and Consumer Protection Act, prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103. An act or practice is unfair if it "offends established public policy and . . . is either immoral, unethical, oppressive,

unscrupulous or substantially injurious to consumers." *Rohrer v. Knudson*, 349 Mont. 197, 205 (2009).

Hurt's counterclaim vaguely alleges Majestic engaged in unlawful practices "with respect to the transaction at issue." (Doc. 6 at ¶ 35.) The claim appears to be based on her claim that Majestic failed to respond to her requests to inspect and fix the alleged defects with the home. (Doc. 22 at 14.) Majestic argues it is undisputed that it did perform a post-delivery inspection and did offer to fix the issues with the home.

Again, Hurt did not respond to Magistic's motion for summary judgment on this claim. The only statement found to purportedly support this claim is her conclusory interrogatory answer that Majestic did not respond to her requests to inspect the home and fix the defects. (Doc. 22 at 14.) Hurt cites no evidence to dispute the email produced by Majestic that indicates a post-delivery inspection was conducted and repairs were offered, or to dispute the Declaration of Jeff Schauer that indicates Majestic continued to offer to conduct the repairs. (Doc. 19 at ¶¶ 12-13; 19-5.) She has also not pointed to any evidence showing she requested further inspection, when such requests were made, or what Majestic's responses were. Hurt's interrogatory response, which lacks detailed facts and any

supporting evidence is, therefore insufficient to create a genuine issue of material fact.

Accordingly, Majestic is entitled to summary judgment on Hurt's counterclaim for violation of Montana's Consumer Protection Act.

## III.    CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Majestic's Motion for Partial Summary Judgment (Doc. 16) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 16th day of August, 2017.

TIMOTHY J. CAVAN
United States Magistrate Judge